Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/12/2025 09:07 AM CDT

- 777 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

In re Interest of Aaden S., a child
under 18 years of age.
State of Nebraska, appellee, v.
Aaden S., appellant.
___ N.W.3d ___

Filed August 12, 2025. No. A-24-947.

1. Courts: Juvenile Courts: Jurisdiction: Appeal and Error. An appel-
late court reviews a juvenile court’s decision to transfer a juvenile
offender’s case to county court or district court de novo on the record
for an abuse of discretion.
2. Judgments: Words and Phrases. An abuse of discretion occurs when a
trial court’s decision is based upon reasons that are untenable or unrea-
sonable or if its action is clearly against justice or conscience, reason,
and evidence.
3. Courts: Juvenile Courts: Jurisdiction: Words and Phrases: Appeal
and Error. In reviewing a trial court’s ruling on a transfer motion,
an appellate court’s function is not to review the record de novo to
determine whether the case should be transferred. Instead, an appellate
court’s review is limited to determining whether the trial court’s reasons
and rulings are clearly untenable. To be untenable is to be incapable of
being defended.
4. Appeal and Error. Alleged errors of the lower court must be both spe-
cifically assigned and specifically argued in the brief of the party assert-
ing the errors to be considered by an appellate court.
5. Constitutional Law: Juvenile Courts. The heightened standards of the
Confrontation Clause do not apply in juvenile proceedings.
6. Constitutional Law: Trial. The right to confrontation is basically a
trial right.
7. Courts: Juvenile Courts. A juvenile transfer hearing is not a trial as it
does not find as a fact that the accused minor is guilty of the offense
charged.
 - 778 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

8. Courts: Juvenile Courts: Proof. The purpose of a juvenile transfer
hearing is to determine whether a preponderance of the evidence sup-
ports transferring the proceeding to the county court or district court.
9. Courts: Juvenile Courts: Rules of Evidence. The customary rules of
evidence do not apply at juvenile transfer hearings.
10. Constitutional Law: Due Process: Juvenile Courts. Because the
Confrontation Clause is largely inapplicable in juvenile court proceed-
ings, the proper analysis is whether the juvenile’s due process rights
were violated.
11. Constitutional Law: Due Process. The U.S. and Nebraska Constitutions
provide that no person shall be deprived of life, liberty, or property with-
out due process of law.
12. Due Process. Due process does not guarantee an individual any particu-
lar form of state procedure.
13. ____. Due process is flexible and calls for such procedural protections
as the particular situation demands.
14. Due Process: Words and Phrases. While the concept of due process
defies precise definition, it embodies and requires fundamental fair-
ness, and its clear central meaning is that parties whose rights are to be
affected are entitled to be heard.
15. Due Process: Notice. Due process requires that parties at risk of the
deprivation of liberty interests be provided adequate notice and an
opportunity to be heard, which are appropriate to the nature of the pro-
ceeding and the character of the rights that might be affected.
16. Due Process: Courts: Juvenile Courts. For juvenile transfer hearings,
due process requires a hearing be held where the juvenile is represented
by counsel and a decision issued by the court sufficient to permit a
meaningful review if appealed.
17. Courts: Juvenile Courts: Prosecuting Attorneys. When an alleged
offense is one over which both the juvenile court and the criminal court
can exercise jurisdiction, the county attorney may move to transfer the
matter from juvenile court to county or district court.
18. Courts: Juvenile Courts: Jurisdiction. When the prosecution seeks to
transfer a juvenile offender’s case to criminal court, the juvenile court
must retain the matter unless a preponderance of the evidence shows
that the proceeding should be transferred to the county court or district
court. The prosecution has the burden by a preponderance of the evi-
dence to show why such proceeding should be transferred.
19. ____: ____: ____. In determining whether a case should be transferred
to criminal court, a juvenile court should consider the factors set forth
in Neb. Rev. Stat. § 43-276 (Cum. Supp. 2024). In order to transfer the
proceedings, the court need not resolve every factor against the juvenile,
 - 779 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

and there are no weighted factors and no prescribed method by which
more or less weight is assigned to a specific factor. Rather, it is a bal-
ancing test by which public protection and societal security are weighed
against the practical and nonproblematical rehabilitation of the juvenile.
20. Courts: Juvenile Courts: Jurisdiction: Proof. Because it is the State’s
burden to prove that a sound basis exists for retaining a case in the dis-
trict court, any factor found not to favor retention should be considered
a factor that favors transfer to the juvenile court.
21. Courts: Expert Witnesses. Trial courts are not obligated to accept an
expert witness’ testimony. If they so decide, trial courts may reject an
expert’s testimony.

Appeal from the County Court for Buffalo County: John P.
Rademacher, Judge. Affirmed.
Charles D. Brewster, of Klein, Brewster, Brandt &
Messersmith, for appellant.
Marti S. Sleister, Deputy Buffalo County Attorney, for
appellee.
Riedmann, Chief Judge, and Pirtle and Arterburn,
Judges.
Pirtle, Judge.
I. INTRODUCTION
Aaden S. was charged in the county court for Buffalo
County, sitting as a juvenile court, with several felonies and a
misdemeanor related to the alleged assault and sexual assault
of J.Z., his then-girlfriend. Following a motion by the State,
the court transferred the matter to the adult docket of the
county court.
Aaden now appeals the transfer and assigns several errors
related to the procedure utilized during his transfer hearing.
For the reasons that follow, we affirm.
II. BACKGROUND
Aaden was 16 years old on September 18, 2024, when
he was charged by a juvenile petition with (1) first degree
 - 780 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

sexual assault, a Class II felony; (2) terroristic threats, a
Class IIIA felony; (3) assault by strangulation or suffocation,
a Class IIIA felony; and (4) third degree domestic assault, a
Class I misdemeanor. These charges stem from two incidents
that occurred in August 2024. Both incidents involved inter-
actions between Aaden and J.Z., who was 18 years old at the
time. On September 4, J.Z. took part in a Family Advocacy
Network (FAN) interview. During the interview, she reported
the following events.
On August 17, 2024, she and Aaden were at a friend’s
house drinking alcohol when he got upset with her. She stated
that he pushed her against a wall by her neck and spit in her
face. They then moved to a bedroom where they continued to
fight. In this bedroom, J.Z. was sitting on the bed with Aaden
kneeling in front of her. She alleged that when he stood up,
his head hit her chin, which caused her lip to bleed. After
they left the bedroom, Aaden continued to yell at J.Z. and told
her to not tell anyone at the party about what had happened.
They continued to fight throughout the evening before head-
ing home.
Aaden got more upset after J.Z. told him that she should
drive because he had consumed four shots of whiskey. After
arguing further, he hit her in the back of the head three times.
J.Z. then sat in the backseat, which prompted Aaden to say,
“[G]et into the ‘fucking passenger seat.’” Once she did so, he
hit her in the head while they were driving away. Aaden then
started driving erratically, which prompted J.Z. to sit on the
floor because she was afraid. Seeing this, Aaden kept telling
her to sit in the seat or he would crash the car.
When they were almost to Aaden’s house, Aaden asked J.Z.
“why she was a whore,” and hit her several more times in
the head and once across the face. Once they got to Aaden’s
house, J.Z. told him she was going home, but he told her that
she was staying. Aaden then forced her out of the car by her
neck, which impacted her ability to breathe. Once she was
able to get free, she tried running away, but Aaden pulled
 - 781 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

her hair and punched her in the face. J.Z. tried getting away
again, but Aaden caught her, punched her in the face, dragged
her by her hair, and told her to get inside. J.Z. stated that
she tried running away around six or seven more times, with
similar results. During one of these attempts, J.Z. got away
and thought she saw a police officer, but Aaden tackled her
and threatened to kill her if she got back up. To keep her
quiet, Aaden grabbed the area of her bicep that he knew con-
tained her birth control device and would cause her pain if he
grabbed it harshly.
They then went to a park where Aaden punched J.Z. in
the face again. J.Z. started screaming because she thought he
broke her nose, so Aaden hit her in the face another time and
covered her mouth with his hand. Aaden then started crying
and said he did not want to be like his father and apologized.
They walked back to Aaden’s house, and J.Z. once again tried
to run away but Aaden tackled her. J.Z. believed this made her
lose consciousness. When she awoke, Aaden told her she could
leave but would not return her keys or phone. He also told her
it was going to be a “long walk home.” Aaden then told her
to get inside his house. They proceeded to go into the garage,
but J.Z. attempted to flee again. After Aaden stopped her, they
argued outside the garage.
Eventually, J.Z. was able to use her “Ring doorbell” to see
that “[t]here were guys at her house,” which angered Aaden.
He then pushed J.Z. up against the garage door. J.Z. tried to
run away again, but Aaden grabbed her and told her to go
inside. J.Z. said that Aaden was being “really scary,” so she lis-
tened and went in the house. Once inside, they went to Aaden’s
room and J.Z. started to clean the blood off her face. At this
point, she noticed bruises were starting to form on her neck.
Aaden then told J.Z. to get into his bed, but she told him
that she was going to sleep alone. Aaden then forced her onto
his bed and took off her clothes. He tried to have sex with her,
but she told him that she did not want to. After Aaden started
kissing her, she told him again that she did not want to have
 - 782 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

sex. Despite this, he penetrated her vagina with his fingers.
Because she wanted him “to stop,” J.Z. agreed to have sex. The
next day, Aaden would not return J.Z.’s keys or let her leave
his house despite her requests. He eventually allowed her to
leave around 3 p.m.
The next incident occurred 8 days later on August 25, 2024,
when J.Z. and Aaden were at Aaden’s house. Aaden had been
drinking alcohol when he asked J.Z. to take her clothes off
and lay next to him, which she did. They soon began fighting,
and Aaden asked her if she wanted to have sex. She said no,
but Aaden pulled his penis out and asked for oral sex. J.Z.
refused. Aaden then told her that she had to either perform
oral sex on him or have sex with him. After more arguing
and refusals by J.Z., she started to perform oral sex on him
but soon stopped because she was tired. He then asked her
to have sex again, which she refused. Despite this refusal,
he positioned her on her stomach and penetrated her vagina
with his penis. J.Z. repeatedly told him to stop and moved
into positions where he could not penetrate her. However,
Aaden moved her back into a different position each time.
This occurred around five times. At some point, J.Z. started to
cry, but Aaden continued anyway. And although he asked her
multiple times if she was all right, and she told him no each
time, he continued to have sex with her.
Afterward, J.Z. tried to put her clothes on, but Aaden did
not let her. When she attempted to put on her underwear, he
tried to rip it off. This led to a physical fight where Aaden
tried to choke J.Z. Because of this, she started screaming
and Aaden covered her mouth with his hand. Aaden’s father
heard the noise and asked what was going on. It was only at
this point that Aaden let J.Z. leave. But as J.Z. left the house,
Aaden pushed her, followed her to her car, and once she was
in the car, spat in her face.
On September 18, 2024, the State motioned to transfer
Aaden’s case to the adult county court. A hearing was held
on November 14. At the hearing, the State offered exhibits
 - 783 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

4 through 19 without calling any witnesses. These exhibits
included photographs of J.Z.’s injuries, text messages between
J.Z. and Aaden, the video recording of J.Z.’s FAN interview,
and the police reports that outlined J.Z.’s allegations. Aaden’s
attorney objected to this evidence, arguing that it was offered
without any attempt to authenticate it. He also asserted that
because it was not being offered through witness testimony, it
violated Aaden’s rights of confrontation and due process. The
court overruled these objections and received the exhibits into
evidence. Notably, the State did not call any witnesses through-
out the proceeding.
Aaden then called his juvenile probation officer, Tyler
Mertens, as a witness. He stated that he became involved
with Aaden when he was 16 years old because of Aaden’s
current charges. He explained that Aaden was originally sent
to a detention center for juveniles but was discharged after
3 weeks with no negative reports. This indicated to Mertens
that Aaden was able to follow the rules, cooperate with staff,
and did not have problems with peers. He also stated that
Aaden was attending out-patient counseling, regularly attend-
ing school, and participating in weekly drug tests. Although
his first drug test was positive for “THC,” his subsequent
tests were all negative. Mertens then discussed how this was
Aaden’s first time in juvenile court and how he did not have
a criminal history outside of some traffic infractions. He also
stated that Aaden was complying with the no-contact order
with J.Z. and was employed. Given Aaden’s lack of criminal
history and his participation in relevant services, as well as the
fact he was being electronically monitored, Mertens believed
that Aaden could succeed on probation.
One of the exhibits received into evidence was Aaden’s
substance abuse assessment. This document showed that
Aaden started smoking marijuana when he was 14 years
old and began drinking alcohol more consistently when he
turned 16 years old. It also explained that he was previously
diagnosed with major depressive disorder and anxiety. The
 - 784 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

assessment further diagnosed him with cannabis use disorder,
alcohol use disorder, nicotine dependence, and ADHD, com-
bined type.
On December 10, 2024, the juvenile court issued an order
granting the State’s motion to transfer. The court generally
found the case should be transferred to adult court because
the crimes involved substantial violence for the purposes of
sexual gratification and Aaden would have less than 2 years
under the juvenile court’s jurisdiction for rehabilitation. The
court further found that Aaden posed a risk to public safety,
attempted to manipulate J.Z. from contacting the police, had
tried to contact J.Z. after the charges were filed, and engaged
in adult activities such as drinking alcohol.
Aaden now appeals.

III. ASSIGNMENTS OF ERROR
Aaden assigns, restated, that (1) the juvenile court abused
its discretion by granting the State’s motion to transfer, (2)
the juvenile court violated his rights to due process by receiv-
ing the State’s evidence over his objections, (3) the transfer
hearing was conducted in a manner that violated his rights to
confrontation and due process, (4) his rights to confrontation
and due process were violated by the rules of evidence not
applying at the transfer hearing, (5) the State failed to show
by a preponderance of the evidence that his case should be
transferred to the county court, (6) the juvenile court violated
his rights to confrontation and due process by receiving evi-
dence without requiring the State to call any witnesses, and (7)
the juvenile court erred in failing to properly consider his best
interests before transferring his case to county court.

IV. STANDARD OF REVIEW
[1,2] An appellate court reviews a juvenile court’s decision
to transfer a juvenile offender’s case to county court or district
court de novo on the record for an abuse of discretion. In re
Interest of Steven S., 299 Neb. 447, 908 N.W.2d 391 (2018).
 - 785 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

An abuse of discretion occurs when a trial court’s decision
is based upon reasons that are untenable or unreasonable or
if its action is clearly against justice or conscience, reason,
and evidence. State v. Aldana Cardenas, 314 Neb. 544, 990
N.W.2d 915 (2023).
V. ANALYSIS
We first note that since Aaden filed his appeal and oral
argument was had in this matter, the Nebraska Supreme Court
issued an opinion in State v. Jeremiah T., 319 Neb. 133, 21
N.W.3d 313 (2025). That case involved a juvenile’s motion
to transfer his case from adult court to juvenile court. After
the district court denied the motion, the juvenile appealed and
we reversed the district court’s decision. On further review,
the Supreme Court reversed our decision and remanded the
cause with directions to affirm the district court’s denial of the
motion to transfer.
[3] In its opinion, the Supreme Court clarified the appropri-
ate standard of review for motions to transfer. It stated:
Abuse of discretion is a highly deferential standard of
review. It is the standard applicable to reviewing a crimi-
nal sentence, where we have explained that “[i]t is not
the function of an appellate court to conduct a de novo
review of the record to determine whether a sentence is
appropriate” and that “[t]he standard is not what sentence
we would have imposed.” Likewise, in reviewing a trial
court’s ruling on a transfer motion, an appellate court’s
function is not to review the record de novo to deter-
mine whether we think the case should be transferred.
Here, the Court of Appeals articulated reasons why it
would have transferred the matter to juvenile court. But
an appellate court’s review is limited to determining
whether the trial court’s reasons and rulings are clearly
untenable. To be “untenable” is to be “incapable of being
defended.”
Id. at 151-52, 21 N.W.3d at 327.
 - 786 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

1. Consolidation of Assignments
[4] While Aaden’s appellate brief contains seven assign-
ments of error, his argument section is divided into only four
parts. Alleged errors of the lower court must be both specifi-
cally assigned and specifically argued in the brief of the party
asserting the errors to be considered by an appellate court.
State v. Goynes, 318 Neb. 413, 16 N.W.3d 373 (2025). Aaden’s
first argument section seems to take issue with the court’s
finding that Aaden’s actions were violent and asserts that his
rights were violated when he was denied the opportunity to
cross-examine evidence of his purported violence. The second
section takes issue with how the court weighed the various
factors under Neb. Rev. Stat. § 43-276(1) (Cum. Supp. 2024).
The third section concerns the purported violation of his rights
to confrontation and due process. Lastly, the fourth section
asserts that we cannot rely on the juvenile court’s assessment
of credibility because the State did not present any witnesses
for the court to evaluate.
In comparing Aaden’s assignments and arguments, we
believe his first and third arguments collectively argue his sec-
ond, third, and sixth assignments of error. Similarly, we believe
his second argument argues both his first and fifth assignments
of error. However, his fourth argument is not assigned, and
none of his arguments correspond to his fourth or seventh
assignments of error.
Therefore, we consolidate Aaden’s second, third, and sixth
assignments of error to assign that the juvenile court violated
his rights to confrontation and due process by receiving evi-
dence without requiring the State to call any witnesses. We
also consolidate his first and fifth assignments of error to
assign that the juvenile court abused its discretion in determin-
ing that his case should be transferred to the adult docket of
the county court. And because they do not comply with our
rules of appellate practice, we do not address his fourth and
seventh assignments of error, as well as the fourth section of
his argument.
 - 787 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

2. Rights to Confrontation
and Due Process
Aaden assigns that the juvenile court violated his rights to
confrontation and due process by receiving evidence without
requiring the State to call any witnesses.
[5-10] We first note that because this was a juvenile pro-
ceeding, which is civil in nature, and not a criminal case,
the heightened standards of the Confrontation Clause are not
applicable. In re Interest of Brian B. et al., 268 Neb. 870, 689
N.W.2d 184 (2004). The U.S. Supreme Court has explained
that “[t]he right to confrontation is basically a trial right.”
Barber v. Page, 390 U.S. 719, 725, 88 S. Ct. 1318, 20 L.
Ed. 2d 255 (1968). A juvenile transfer hearing is not a trial
as it does not find as a fact that the accused minor is guilty
of the offense charged. See Neb. Rev. Stat. § 43-274(5)(a)
(Cum. Supp. 2024). Instead, the purpose of the hearing is to
determine whether a preponderance of the evidence supports
transferring the proceeding to the county court or district court.
Id. In other words, it is more akin to a hearing on a motion
to change venue. The hearing must be held within 15 days
of the motion being filed and “[t]he customary rules of evi-
dence shall not be followed at such hearing.” Neb. Rev. Stat.
§ 29-1816(3)(a) (Cum. Supp. 2024). Because the Confrontation
Clause is largely inapplicable in juvenile court proceedings, the
Supreme Court has stated that in such cases the proper analysis
is whether the juvenile’s due process rights were violated. In re
Interest of Brian B. et al., supra.
[11-15] The U.S. and Nebraska Constitutions provide that
no person shall be deprived of life, liberty, or property with-
out due process of law. In re Interest of Jordon B., 316 Neb.
974, 7 N.W.3d 894 (2024). Due process does not guarantee an
individual any particular form of state procedure. Id. It is flex-
ible and calls for such procedural protections as the particular
situation demands. Id. While the concept of due process defies
precise definition, it embodies and requires “‘fundamental
fairness,’” and its clear central meaning is that “‘[p]arties
 - 788 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

whose rights are to be affected are entitled to be heard.’” Id. at
987, 7 N.W.3d at 904. Broadly speaking, due process requires
that parties at risk of the deprivation of liberty interests be
provided adequate notice and an opportunity to be heard,
which are appropriate to the nature of the proceeding and the
character of the rights that might be affected. Id.
The U.S. Supreme Court has previously addressed the due
process requirements for transferring juvenile proceedings to
adult court. In Kent v. United States, 383 U.S. 541, 86 S.
Ct. 1045, 16 L. Ed. 2d 84 (1966), the juvenile court of the
District of Columbia waived jurisdiction over a juvenile to
the U.S. District Court for the District of Columbia. In mak-
ing this decision, the juvenile court did not hold any hearings
and did not confer with the juvenile, the juvenile’s parents,
or the juvenile’s counsel. Nor did the court make any find-
ings or provide any reason for the waiver of jurisdiction.
The U.S. Supreme Court articulated that while the District
of Columbia’s Juvenile Court Act provided the juvenile court
with “considerable latitude within which to determine whether
it should retain jurisdiction over a child,” id., 383 U.S. at
552-53, the statute “assume[d] procedural regularity sufficient
in the particular circumstances to satisfy the basic require-
ments of due process and fairness,” id., 383 U.S. at 553.
[16] The U.S. Supreme Court then highlighted three essen-
tial elements that juvenile transfer proceedings must include
to satisfy due process. First, it articulated that a hearing must
be held. While this hearing may be informal and need not
“conform with all of the requirements of a criminal trial or
even of the usual administrative hearing, [it] must measure up
to the essentials of due process and fair treatment.” Id., 383
U.S. at 562. A critical component to that fair treatment is the
requirement that the juvenile be represented by counsel at the
hearing. The Court articulated that this right to representation
is not a mere formality. Kent, supra. Instead, the juvenile’s
counsel must be “given an opportunity to function.” Id., 383
U.S. at 561. Lastly, the juvenile court must issue a decision in
 - 789 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

which it states its reasoning for the transfer. Id., supra. The
Court stated that this decision does not need to be “formal
or . . . necessarily include conventional findings of fact,” but
it must contain sufficient specificity to permit meaningful
review. Id. See, also, State v. Tyler P., 299 Neb. 959, 970, 911
N.W.2d 260, 268 (2018) (describing how Nebraska courts in
transfer proceedings must “make a statement of its findings
which provides sufficient specificity to permit meaningful
[appellate] review”).
In our review of relevant Nebraska case law, we did not
find any case where the Supreme Court or Court of Appeals
considered the adequacy of the Kent due process require-
ments in juvenile transfer proceedings. However, other juris-
dictions that have considered this issue have largely declined
to afford juveniles greater due process protections than those
required under Kent. More specifically, Ohio, Michigan, Iowa,
Minnesota, and Idaho have all refused to extend the right of
confrontation to juvenile transfer proceedings. See, State v.
Dell, 2022 Ohio 2483, 192 N.E.3d 1288 (Ohio App. 2022);
People v. Hana, 443 Mich. 202, 504 N.W.2d 166 (1993); State
v. Wright, 456 N.W.2d 661 (Iowa 1990); Matter of Welfare of
T. D. S., 289 N.W.2d 137 (Minn. 1980); Wolf v. State, 99 Idaho
476, 583 P.2d 1011 (1978). The only jurisdiction we could
find that chose to extend the constitutional right of confronta-
tion to such proceedings was Indiana. See Summers v. State,
248 Ind. 551, 230 N.E.2d 320 (1967).
While the dissent points to several other jurisdictions that
recognize a right of confrontation in juvenile transfer pro-
ceedings, each of those jurisdictions has done so through stat-
ute or by court rule. If Nebraska had enacted a similar statute
or court rule, there would be no need to reach the constitu-
tional question. But because Nebraska has not codified such a
right, any protection must arise, if at all, from the federal or
state constitution.
The dissent also asserts that we have failed “to identify
any case in which our appellate courts have addressed and
 - 790 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

condoned a transfer from juvenile court to adult court based
solely upon exhibits offered by counsel without any identifica-
tion or authentication or supporting witness.” We acknowledge
that while our appellate courts have not addressed this issue
directly, this is not the first time the State has utilized this
procedure. In State v. Jeremiah T., 319 Neb. 133, 21 N.W.3d
313 (2025), the State’s evidence wholly consisted of written
documents, surveillance video, and recordings of the defend­
ant and alleged victim. Although that case involved a motion
to transfer from adult court to juvenile court, the State did not
attempt to authenticate its evidence, nor did it call any sup-
porting witnesses. While this issue was not raised on appeal,
we note the Supreme Court did not comment on the practice
utilized by the State or engage in a plain error review.
While we agree that the approach utilized by the State may
not be the best practice in terms of creating a clear and com-
plete record for both the trial court and an appellate court on
review, we do not find that Aaden’s right to due process was
violated by the State’s decision to introduce its evidence with-
out calling any witnesses. Despite the approach utilized by
the State, the transfer hearing still met all of the requirements
set forth in Kent v. United States, supra, to satisfy Aaden’s
right to due process. The juvenile court conducted a hearing,
Aaden was represented by counsel at that hearing, and the
juvenile court issued a reasoned opinion in which it explained
in sufficient detail its decision for transferring Aaden’s case
to adult court. The dissent points out that counsel for Aaden
had no ability to cross-examine the State’s witnesses, thus
impeding counsel’s ability to function. However, we note that
counsel was not prevented from calling any individual named
in the police reports or portrayed in the photographs or video
received by the court. While the burden is on the State, the
forum of a transfer hearing is not a trial and the rules of evi-
dence do not apply. Thus, if the State wishes to run the risk
of not meeting its burden of proof by failing to call witnesses,
the defense is not left without recourse. It has the ability to
 - 791 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

call the necessary witnesses it needs to contest the evidence
adduced by the State. Here, Aaden chose not to contest the
State’s evidence in that manner. Accordingly, we determine
that Aaden’s right to due process was not violated.
3. Transfer to County Court
Aaden next assigns that the juvenile court abused its discre-
tion in determining that his case should be transferred to the
adult docket of the county court.
Neb. Rev. Stat. § 43-246.01(3) (Cum. Supp. 2024) grants
concurrent jurisdiction to the juvenile court and the county or
district courts over juvenile offenders who (1) are 11 years of
age or older and commit a traffic offense that is not a felony or
(2) are 14 years of age or older and commit a Class I, IA, IB,
IC, ID, II, or IIA felony. See § 29-1816. Actions against these
juveniles may be initiated either in the juvenile court or in the
county or district court. § 43-246.01(3). In the present case, the
first degree sexual assault allegation, which is a Class II felony,
put Aaden within this category of juvenile offenders.
[17,18] When an alleged offense is one over which both
the juvenile court and the criminal court can exercise juris-
diction, the county attorney may move to transfer the matter
from juvenile court to county or district court. § 43-274(5)(a).
When the prosecution seeks to transfer a juvenile offender’s
case to criminal court, the juvenile court must retain the
matter unless a preponderance of the evidence shows that
the proceeding should be transferred to the county court or
district court. In re Interest of William E., 29 Neb. App. 44,
950 N.W.2d 392 (2020). The prosecution has the burden by a
preponderance of the evidence to show why such proceeding
should be transferred.
[19] Section 43-276(1) sets forth 15 factors for a juvenile
court to consider in making the determination of whether to
transfer a case to county court or district court. In re Interest
of Steven S., 299 Neb. 447, 908 N.W.2d 391 (2018). These
factors include:
 - 792 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

(a) The type of treatment such juvenile would most likely
be amenable to; (b) whether there is evidence that the
alleged offense included violence; (c) the motivation for
the commission of the offense; (d) the age of the juvenile
and the ages and circumstances of any others involved
in the offense; (e) the previous history of the juvenile,
including whether he or she had been convicted of any
previous offenses or adjudicated in juvenile court; (f)
the best interests of the juvenile; (g) consideration of
public safety; (h) consideration of the juvenile’s ability
to appreciate the nature and seriousness of his or her
conduct; (i) whether the best interests of the juvenile and
the security of the public may require that the juvenile
continue in secure detention or under supervision for a
period extending beyond his or her minority and, if so,
the available alternatives best suited to this purpose; (j)
whether the victim or juvenile agree to participate in
restorative justice; (k) whether there is a juvenile pre-
trial diversion program established pursuant to sections
43-260.02 to 43-260.07; (l) whether the juvenile has
been convicted of or has acknowledged unauthorized use
or possession of a firearm; (m) whether a juvenile court
order has been issued for the juvenile pursuant to section
43-2,106.03; (n) whether the juvenile is a criminal street
gang member; and (o) such other matters as the parties
deem relevant to aid in the decision.
§ 43-276. The court need not resolve every factor against the
juvenile, and there are no weighted factors and no prescribed
method by which more or less weight is assigned to a specific
factor. In re Interest of Steven S., supra. Rather, it is a balanc-
ing test by which public protection and societal security are
weighed against the practical and nonproblematical rehabilita-
tion of the juvenile. Id.
(a) Factors Weighing in Favor of Transfer
Of the 15 statutory factors, most weigh in favor of transfer.
First, and most notably, Aaden’s crimes involved exceptional
 - 793 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

and repeated violence. Throughout both incidents, it is alleged
that he grabbed J.Z. by the neck to the point where she could
not breathe, hit her on the back of the head multiple times,
slapped her, spat in her face at least twice, and punched her
in the face repeatedly. When she attempted to escape numer-
ous times, Aaden recurrently tackled her and dragged her back
by her hair. On one of those occasions, she lost consciousness
after being tackled. More so, Aaden threatened to crash his car
when J.Z. did not listen to him and later threatened to kill her
if she tried to get a police officer’s attention.
Aaden’s actions also involved repeated sexual abuse.
Although J.Z. repeatedly told him that she did not want to
have sex, he digitally penetrated her, forced her to perform
oral sex on him under threat of being vaginally penetrated, and
later vaginally penetrated her with his penis multiple times.
While he had sex with J.Z. against her wishes, she repeat-
edly asked him to stop, attempted to put herself in positions
where he could not penetrate her, and told him that she was
not all right. However, despite these requests and her crying,
each time Aaden repositioned her and continued the penetra-
tion. And once the sexual abuse ended and J.Z. tried to get
dressed, Aaden attempted to rip off her underwear and choked
her. Given this overwhelming display of violence, this factor
weighs heavily in favor of transfer.
Aaden’s actions were clearly motivated by a desire for
sexual gratification and control. Because he was willing to use
extraordinary violence to achieve this, he poses a clear risk to
the public. Therefore, the factors relating to his motivation and
whether he poses a public safety risk also weigh heavily in
favor of transferring his case.
Aaden was 16 years 10 months old when these events
occurred. By the time the juvenile court issued its order,
Aaden was 17 years 2 months old. At his age, Aaden should
have understood the seriousness of his repeated physical and
sexual abuse. He also demonstrated an ability to appreciate
the wrongfulness of his actions when he took a moment to
 - 794 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

apologize to J.Z. on the night of August 17, 2024, and told
her that he did not want to be like his father. But despite this
moment of clarity, he soon continued beating, threatening,
and abusing her. He also demonstrated a recognition of the
seriousness of his actions and an understanding of the possible
legal ramifications when he berated J.Z. over text messages
for cooperating with law enforcement. Accordingly, the factors
involving Aaden’s age and his ability to appreciate the serious-
ness of his conduct also weigh heavily in favor of transfer.
Given the repeated, violent, and impulsive nature of Aaden’s
actions, we are not confident he will be able to rehabilitate
himself in the less than 2 years remaining before he reaches the
age of majority. As such, the factor pertaining to whether the
security of the public may require Aaden to continue in secure
detention or under supervision for a period extending beyond
his minority also weighs in favor of transferring his case.
Aaden is currently prohibited from contacting J.Z., and she
has refused his contacts. Because of this, the factor relating to
whether the victim or juvenile agreed to participate in restor-
ative justice also weighs in favor of transfer.
Lastly, as articulated by the juvenile court, Aaden considers
himself to be an adult and capable of making adult decisions.
An example of this was his consumption of alcohol during
both incidents. With this evidence, we determine the factor
that allows for the consideration of other matters as deemed
relevant by the parties also weighs in favor of transfer.
(b) Factors Weighing in Favor of Retention
Several factors weigh against transfer. Aaden’s best inter-
ests would likely be served by remaining in juvenile court and
thereby avoiding several possible felony convictions. He has
also proven amenable to treatment while under jurisdiction of
the juvenile court. His probation officer testified that he was
attending outpatient therapy, going to school, passing his drug
tests, and abiding by court orders. Further, except for the cur-
rent charges and some minor traffic infractions, Aaden does not
have a prior criminal history.
 - 795 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

[20] There were also some factors for which there was no
evidence presented. In State v. Aldana Cardenas, 314 Neb.
544, 990 N.W.2d 915 (2023), the Supreme Court found that
because it is the State’s burden to prove that a sound basis
exists for retaining a case in the district court, any factor
found not to favor retention should be considered a factor that
favors transfer to the juvenile court. There was no evidence
that a firearm was involved, nor that Aaden was a member of
a criminal street gang. There was also no evidence presented
as to whether there was a juvenile pretrial diversion program
that Aaden qualified for, nor any evidence as to whether a
juvenile court order had been issued for him under Neb. Rev.
Stat. § 43-2,106.03 (Reissue 2016). Because no factor can
be considered neutral or inapplicable, these factors weigh
against transfer.

(c) Resolution
We determine the juvenile court did not abuse its discretion
in transferring Aaden’s case to county court. While not deter-
minative, we note that a majority of the factors weigh in favor
of transfer. There is no arithmetical computation or formula
required in a court’s consideration of the statutory criteria or
factors. State v. Esai P., 28 Neb. App. 226, 942 N.W.2d 416
(2020). There are no weighted factors, that is, no prescribed
method by which more or less weight is assigned to each factor
specified by statute. Id.
But even if a majority of the factors did not weigh in
favor of transfer, the relevant factors—including the violence
involved in the crimes, Aaden’s motivation, his age at the time
of the offense, the risk he poses to public safety, the unlikeli-
hood of full rehabilitation within 2 years, and his ability to
appreciate the nature and seriousness of his conduct—collec-
tively weigh heavily enough in favor of transfer to support the
juvenile court’s decision. While we acknowledge that Aaden
has shown some progress under the jurisdiction of the juvenile
court, we cannot overlook the significant and overwhelming
 - 796 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

violence portrayed in this matter. As demonstrated by his
actions, Aaden will continue to pose a significant risk to public
safety beyond his minority and will require extended supervi-
sion to mitigate that risk. Therefore, we conclude the juvenile
court’s decision to transfer Aaden’s case to county court was
not untenable or unreasonable.
The dissent asserts the juvenile court was unable to conduct
the required balancing test—by which public protection and
societal security are weighed against the practical and non-
problematical rehabilitation of the juvenile—because the State
failed to present any evidence regarding Aaden’s ability to
be timely rehabilitated through the juvenile system. But there
was substantial evidence that implicitly went toward Aaden’s
inability to be rehabilitated in under 2 years. At the transfer
hearing, the State offered J.Z.’s forensic interview, police
reports, and photographs to show that Aaden used extreme vio-
lence against J.Z. multiple times, later attempted to convince
her to not cooperate with law enforcement, and demonstrated
an understanding at the time of the events that his actions were
wrong. This evidence, the authenticity of which was not dis-
puted by Aaden or his attorney, in conjunction with the little
time Aaden had before aging out of the juvenile court’s juris-
diction, was sufficient for the court to conduct the requisite
balancing test.
[21] We also acknowledge that although Mertens testified
Aaden could be rehabilitated within 2 years, the court was not
obligated to accept his opinion. See State v. Jeremiah T., 319
Neb. 133, 21 N.W.3d 313 (2025). In Jeremiah T., the Supreme
Court held that the district court could reject the testimony
of a forensic psychologist who testified to the defendant’s
amenability to treatment. Here, the court explicitly consid-
ered and rejected the probation officer’s opinion, noting that
the probation officer had been provided limited information
regarding the case at that point in time. We note that in the
sentencing scenario, the Supreme Court has long held that a
sentencing judge is not bound by the recommendations of a
 - 797 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

probation officer in determining a sentence to be imposed.
State v. Johnson, 240 Neb. 924, 485 N.W.2d 195 (1992); State
v. Stranghoener, 208 Neb. 598, 304 N.W.2d 679 (1981). We
can find no error in the court’s decision to reject Mertens’
testimony.
We further note that this matter is distinguishable from In
re Interest of William E., 29 Neb. App. 44, 950 N.W.2d 392
(2020), which is cited by the dissent. In that case, we held that
because the State failed to present any evidence as to whether
the juvenile could be rehabilitated, had a prior criminal his-
tory, or posed a public safety risk, the juvenile court was
unable to balance the risk he posed to public safety against his
ability to be rehabilitated.
In addition, we further pointed out:
[The juvenile] argues that the State failed to pro-
duce sufficient evidence to meet its burden to show that
the case should be transferred to county court. Before
addressing the evidence presented by the State and the
factors set forth above, we first note that the court made
a brief oral pronouncement from the bench following a
hearing that lasted only 24 minutes, stating the factors it
found to weigh in favor of transferring the case to county
court. It then entered the following journal entry: “Court
finds that, based on JV43-276, no treatment available and
this offense was violent, public safety as well, and old
enough to appreciate serious [sic] of the offense.”
We also note there were three exhibits offered and
received into evidence, but the record does not indicate
when the court would have reviewed those exhibits prior
to its oral pronouncement at the end of the hearing. The
court did not explain in its oral pronouncement or its
journal entry why it found certain factors favored trans-
ferring the case to county court, nor did it review all the
factors.
Id. at 50, 950 N.W.2d at 397.
 - 798 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

Therefore, we concluded the juvenile court abused its dis-
cretion when it granted the State’s motion to transfer the case
to adult court. But this is not what occurred in the present mat-
ter. Here, the State offered evidence to show that Aaden was
a public safety risk and would have little time under the juris-
diction of the juvenile court to be rehabilitated. Accordingly,
unlike in In re Interest of William E., supra, the juvenile court
in this case possessed sufficient evidence that allowed it to
balance Aaden’s amenability for rehabilitation against the risk
he posed to the public.
VI. CONCLUSION
We determine the juvenile court did not violate Aaden’s
rights to confrontation and due process by allowing the State
to introduce evidence without calling any witnesses. We also
determine that the court did not abuse its discretion in trans-
ferring his case from juvenile court to county court.
Affirmed.
Riedmann, Chief Judge, dissenting.
The majority concludes that (1) a juvenile’s due process
rights are not violated when the juvenile’s case is transferred to
adult court upon mere presentation of unidentified documents
and (2) the State meets its burden of proving by a preponder-
ance of the evidence that the proceeding should be transferred
to the county court without any evidence that the juvenile is
not amenable to services in the juvenile court. Given the stakes
involved in transferring this juvenile’s case to adult court
where he faces potential convictions of a Class II felony and
two Class IIIA felonies, carrying decades of possible impris-
onment, due process and our juvenile justice system require
more. Accordingly, I dissent.

Purpose of Juvenile Court.
When addressing its first interlocutory appeal of a trans-
fer from juvenile court to adult court, the Nebraska Supreme
Court articulated the purpose of juvenile courts. See In re
 - 799 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

Interest of Steven S., 299 Neb 447, 908 N.W.2d 391 (2018).
It stated:
We have long held that the object of the juvenile code
is corrective, to the end that the child’s reformation be
brought about. And we have observed that a juvenile
proceeding is not a prosecution for a crime but a spe-
cial proceeding that serves as an ameliorative alternative
to a criminal prosecution and that the purpose of our
statutes relating to youthful offenders is the education,
treatment, and rehabilitation of the child. Moreover, the
juvenile code expounds upon these purposes at length
and the codification of recent changes allocating juris-
diction between juvenile and adult courts illustrates the
Legislature’s goal of favoring juvenile courts as forums
for criminal offenses committed by minor children.
Id. at 455, 908 N.W.2d at 397.
The U.S. Supreme Court has acknowledged the crucial role
transfer hearings play in juvenile cases. In Kent v. United
States, 383 U.S. 541, 560, 86 S. Ct. 1045, 16 L. Ed. 2d 84
(1966), the Court stated, “The determination of whether to
transfer a child from the statutory structure of the Juvenile
Court to the criminal process of the District Court is ‘criti-
cally important.’” Since that time, federal and state courts
have recognized the same. See, e.g., Kemplen v. State of
Maryland, 428 F.2d 169, 174 (4th Cir. 1970) (“it seems to us
nothing can be more critical to the accused than determining
whether there will be a guilt determining process in an adult-
type criminal trial. The waiver proceeding can result in dire
consequences indeed for the guilty accused. If the juvenile
court decides to keep jurisdiction, he can be detained only
until he reaches majority. . . . But, if jurisdiction is waived
to the adult court, the accused may be incarcerated for much
longer, depending upon the gravity of the offense, and, if
the offense be a felony, lose certain of his rights of citizen-
ship”) (emphasis omitted); R.H. v. State, 777 P.2d 204, 210
(Alaska App. 1989) (“[n]or can juvenile waiver proceedings
 - 800 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

realistically be said to affect ‘only the forum where the issue
of guilt will be adjudicated.’ A juvenile waiver proceeding is
the only available avenue by which the state may seek to pros-
ecute a child as an adult. Consequently, the stakes involved in
such proceedings are high”); Ramona R. v. Superior Court, 37
Cal. 3d 802, 810, 693 P.2d 789, 795, 210 Cal. Rptr. 204, 210
(1985) (“[t]he result of a fitness hearing is not a final adjudi-
cation of guilt; but the certification of a juvenile offender to
an adult court has been accurately characterized as ‘the worst
punishment the juvenile system is empowered to inflict’”);
Edwards v. State, 227 Kan. 723, 725, 608 P.2d 1006, 1009
(1980) (“proceedings to certify a minor to stand trial as an
adult were ‘comparable in seriousness to a felony prosecu-
tion,’” quoting J. T. P. v. State, 544 P.2d 1270 (Okla. Crim.
App. 1975)).
In Kent, the U.S. Supreme Court declined to impose “all of
the requirements of a criminal trial or even of the usual admin-
istrative hearing,” but held that “the hearing must measure up
to the essentials of due process and fair treatment.” Id., 383
U.S. at 562. It determined that as to counsel’s involvement in
the proceeding, “it is precisely the role of counsel to ‘deni-
grate’” adverse information provided to the court. Id., 383
U.S. at 563. It expressly rejected the statement of the U.S.
Court of Appeals for the District of Columbia Circuit that
cross-examination by the juvenile’s counsel is “‘the kind of
adversarial tactics which the system is designed to avoid.’”
Id., 383 U.S. at 560. Rather, the Supreme Court rebuked the
suggestion that defense counsel’s role was limited to bringing
forward affirmative information. It concluded that a juvenile’s
right to counsel is “meaningless—an illusion, a mockery—
unless counsel is given an opportunity to function.” Id., 383
U.S. at 561.
Keeping in mind the “critically important” role of the juve-
nile transfer proceeding, I turn now to the method by which
the State presented its “evidence.” The State adduced no testi-
mony, and although the majority identifies the exhibits offered
 - 801 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

by the State to include “photographs of J.Z.’s injuries, text
messages between J.Z. and Aaden, [and] the video recording of
J.Z.’s FAN interview,” no one at the hearing identified them as
such. In preliminary statements, the State advised the court, “I
have evidence in terms of both photos, the police reports, and
the video from the CAC interview.” The exhibits were offered
and received as merely “Exhibits 4 through 19.” Aaden’s coun-
sel objected, stating:
[M]y client has the right to due process of law to have
some basic things fulfilled before the Court can accept
evidence. The first thing that comes to mind is authenti-
cation. You know, those photographs up there, other than
representations by counsel, we don’t know who those
photographs are of, who took them, when they were
taken, and what they purport to show. So, I make those
objections pretty much to all of the evidence that’s going
to be offered today unless we have a witness that can
offer some foundation and authenticate what the exhibits
are. I don’t know what the number is on the video here,
Your Honor, but same thing.
In addition, the Sixth Amendment right to confronta-
tion is not available through a video. And I don’t know if
the video is self-authenticating or not, but we got to have
some due process of law in this hearing, Judge, because
of the serious charges that my client’s facing. And so we
would object for those reasons. . . .
....
I can’t cross examine a video. I can’t cross examine
anything about those photographs or anything else that’s
up there in your stack of exhibits. So, therein lies the
problem.
At no time during the hearing were the exhibits authenti-
cated; no testimony was received to identify the photographs
as being of the victim or of the injuries that she allegedly
sustained in the altercations. The screenshots do not identify
the date, the sender, or the recipient. There is no indication
 - 802 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

they include the complete conversations. No author of the
police reports was called to testify regarding their preparation.
No witness was presented that Aaden’s counsel could cross-
examine regarding any of these exhibits. “While the Nebraska
Evidence Rules do not apply in juvenile proceedings, the basic
requirements of due process oblige a court to consider the
type of evidence used by the State in order to determine the
weight to be given to that evidence.” In re Interest of Aaron
D., 269 Neb. 249, 262, 691 N.W.2d 164, 174 (2005).
Addressing Aaden’s due process argument, the majority
focuses solely on the right of a juvenile to confrontation
in transfer hearings and cites to five jurisdictions that have
“refused to extend the right of confrontation to juvenile trans-
fer proceedings.” In all the cases cited, however, the State
called witnesses who presented the offending testimony, albeit
through hearsay. In State v. Dell, 2022 Ohio 2483, 192 N.E.3d
1288 (Ohio App. 2022), extensive testimony was provided
by the detective who investigated the offense. The Dell court
noted that the defendant “did confront and cross-examine the
witnesses that the state presented at the bindover hearing.”
2022 Ohio at ¶ 50, 192 N.E.3d at 1301. In People v. Hana,
443 Mich. 202, 504 N.W.2d 166 (1993), the State elicited
testimony from three officers who were involved in the inves-
tigation and a probate court psychologist, all of whom were
presumably available for cross-examination. In State v. Wright,
456 N.W.2d 661 (Iowa 1990), a probation officer conducted
an investigation and filed a report as required by statute. He
was unavailable at the time of the hearing, and the report was
introduced through his supervisor. Rejecting the juvenile’s
argument that the report was inadmissible hearsay, the Iowa
court stated:
We similarly conclude that under Iowa law a juvenile
has no statutory right to confrontation when reliable
hearsay evidence is offered and accepted. We adopt the
safeguards suggested by the American Bar Association
standards: hearsay evidence is not objectionable when
 - 803 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

there are indicia of trustworthiness and when the evidence
was not obtained in violation of the juvenile’s constitu-
tional rights.
Id. at 664 (emphasis supplied). It further noted that the juve-
nile’s counsel “had a right to, and did, cross-examine all
the witnesses who testified.” Id. at 666. Finally, in Matter
of Welfare of T. D. S., 289 N.W.2d 137 (Minn. 1980), the
law enforcement officers testified and were subject to cross-
examination. Noting the requirement of reliability, the court
stated: “When hearsay is reliable and an opportunity to dispute
it is afforded, application of strict exclusionary rules of evi-
dence to reference hearings would impede both the state and
the juvenile in fully advising the court of relevant consider-
ations.” Id. at 140 (emphasis supplied).
The majority also contends that the only jurisdiction which
it could find that extended the right to confrontation in juve-
nile transfer pleadings was Indiana. My research reveals, how-
ever, a slew of jurisdictions that not only allow, but mandate,
cross-examination by either statute or court rule. See, e.g.,
Ala. Code § 12-15-202(f)(3) (2012) (providing that, in juve-
nile transfer hearing, accused “has the right to confront all
witnesses against the child, subject to limitations recognized
by the United States Supreme Court”). See, also, A.P.S. v.
State, 378 So. 3d 589 (Ala. Crim. App. 2022). Other jurisdic-
tions mandating cross-examination through statute include,
but are not limited to, West Virginia (W. Va. Code Ann.
§ 49-5-2 (LexisNexis Supp. 2009), providing that juvenile has
right to cross-examine witnesses); North Dakota (N.D. Cent.
Code § 27-20-27 (2016), providing party is entitled to cross-
examine adverse witnesses); and Wyoming (Wyo. Stat. Ann.
§ 14-6-223(b)(ii) (2013), providing right to cross-examine wit-
nesses at juvenile transfer hearing).
Regardless of whether the Confrontation Clause applies
in juvenile transfer proceedings absent statutory enactment,
there can be no doubt that due process applies. The major-
ity fails to identify any case in which our appellate courts
 - 804 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

have addressed and condoned a transfer from juvenile court
to adult court based solely upon exhibits offered by counsel
without any identification, authentication, or supporting wit-
ness. It cites to a similar procedure used in State v. Jeremiah
T., 319 Neb. 133, 21 N.W.3d 313 (2025), and observes that
the Nebraska Supreme Court did not “comment” on the prac-
tice utilized, nor engage in a plain error review. However, the
case was before the Supreme Court on the State’s petition
for further review, so no due process error was assigned, nor
was the procedure of the juvenile court at issue. As stated in
Jeremiah T., supra, 319 Neb. at 142, 21 N.W.3d at 321, “If
further review is granted, the Nebraska Supreme Court will
review only the errors assigned in the petition for further
review and discussed in the supporting memorandum brief.”
Rather than identify a case in which our appellate courts,
or any appellate court for that matter, have addressed whether
the procedure used in this case complies with due process,
the majority has identified only cases in which hearsay was
allowed based upon there being some indicia of reliability and
a witness who could be cross-examined. Here, no indicia of
reliability exists and no witnesses testified. Although Aaden
had counsel, he was severely limited in his ability to discredit
the exhibits received.
Keeping in mind that it is the State’s burden to prove by
a preponderance of the evidence that the proceeding should
be transferred to the county court, it is not defense counsel’s
responsibility to call the State’s witnesses to lay the proper
foundation or impeach improperly admitted evidence, although
the majority appears to state otherwise. Rather, defense coun-
sel should be provided the opportunity to cross-examine those
persons supplying adverse evidence, or at least have assur-
ances that the evidence upon which the court will rely has
some indicia of reliability. Even in hearings for protection
orders, which the Nebraska Supreme Court has recognized as
possessing a relatively limited intrusion on a party’s liberty
interests, “due process does impose some basic [procedural]
 - 805 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

requirements.” D.W. v. A.G., 303 Neb. 42, 49, 926 N.W.2d
651, 657 (2019).
On this record, where the State was allowed to simply offer
“Exhibits 4 through 19” without any authentication or foun-
dation, and called no witnesses who could either support or
be cross-examined as to these exhibits, I cannot find that the
hearing measured up to the essentials of due process and fair
treatment as required by Kent v. United States, 383 U.S. 541,
86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966).

Finding in Favor of Transfer.
Even assuming the juvenile court properly received the
exhibits, I would find it abused its discretion in determining
the evidence was sufficient to meet the State’s burden, not
based upon a reweighing of factors, but, rather, based upon
the absence of evidence upon which to weigh Aaden’s ame-
nability to treatment. The evidence offered by the State and
received by the juvenile court consisted of nine photographs,
four text messages, two police reports, and a flash drive con-
taining a video of a “FAN interview.” Through the testimony
of Aaden’s juvenile probation officer, Tyler Mertens, Aaden
presented his counseling records. None of the State’s evidence
provided any information regarding the type of treatment that
was available to Aaden through the juvenile court or the type
of treatment to which he would be amenable. The juvenile
court recognized the absence of such evidence in its order,
stating, “The State failed to present any evidence regarding
necessary evaluations for a juvenile adjudicated with sexu-
ally offending and how long such an evaluation would take
to complete. Nor was the Court presented with any evidence
regarding the possible nature of treatment and the length
of treatment.”
Mertens testified to his belief that Aaden could be safely
supervised in the community and was not a threat to public
safety. He believed that Aaden was amenable to treatment
and that juvenile probation could help him. He confirmed
 - 806 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

Aaden had no criminal history. The only evidence of prior
involvement in the court system was that Aaden successfully
completed a diversion program for vaping a few years prior.
Aaden expressed a desire to improve himself and acknowl-
edged that the company he keeps is the source of his troubles.
The State did not rebut this evidence. The transfer hearing was
held in November 2024; Aaden was 17 years 1 month old at
the time.
Despite the lack of evidence to rebut Mertens’ testimony and
Aaden’s desire to change, the juvenile court determined that
less than two years of juvenile rehabilitative services
would be an insufficient amount of time to treat and super-
vise Aaden. Any testimony to the contrary by Probation
Officer Mertens is rejected as lacking credibility due to
the limited information provided to Probation Officer
Mertens to this point in the proceedings.
The limited information assumingly refers to Mertens’ testi-
mony that he had not read the police reports; however, he con-
firmed he was aware that the charges were first degree sexual
assault, strangulation, terroristic threats, and domestic assault,
all of which he considered “serious charges” and which would
involve violence.
Our standard of review is de novo on the record for an
abuse of discretion. See In re Interest of Steven S., 299 Neb
447, 908 N.W.2d 391 (2018). And although we apply the rule
that when the evidence is in conflict, an appellate court may
give weight to the fact that the lower court observed the wit-
nesses and accepted one version of the facts over the other,
the evidence here was not in conflict. There was no evidence
before the court that Aaden could not be rehabilitated within
the remaining 23 months of his minority. To the contrary, it
revealed that he had no adverse reports while detained and
had been in the community for the preceding 5 weeks without
incident. The only witness who testified to Aaden’s amenabil-
ity to treatment was Mertens, and his testimony was favorable
to Aaden. Although the juvenile court was not bound by this
 - 807 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

testimony (see State v. Jeremiah T., 319 Neb. 133, 21 N.W.3d
313 (2025)), absent this testimony, the juvenile court had no
evidence as to Aaden’s amenability to treatment. Yet it is pre-
cisely his amenability to treatment that the juvenile court is
required to weigh against public protection and societal secu-
rity when ruling upon a motion to transfer. See id.
Neb. Rev. Stat. § 43-276 (Cum. Supp. 2024) sets forth 15
factors for a juvenile court to consider in making the determi-
nation of whether to transfer a case to county court or district
court. The court need not resolve every factor against the
juvenile, and there are no weighted factors and no prescribed
method by which more or less weight is assigned to a spe-
cific factor. Jeremiah T., supra. Rather, it is a balancing test
by which public protection and societal security are weighed
against the practical and nonproblematical rehabilitation of
the juvenile. Id. Here, the court had no adverse evidence
regarding the practical and nonproblematical rehabilitation
of Aaden because the State failed to adduce any. The juve-
nile court was free to discredit Mertens’ testimony; however,
without any evidence, it is unclear how the court was able to
perform the balancing test to conclude by a preponderance of
the evidence that the proceeding should be transferred to the
county court.
It appears, based upon the court’s order and as affirmed
by the majority, that the seriousness of the crimes allegedly
committed was a sufficient basis for the court to determine
the proceeding should be transferred to adult court. But unlike
some other jurisdictions, Nebraska has not included mandatory
transfer offenses into its juvenile transfer statutes. Compare
Neb. Rev. Stat. § 43-274 (Cum. Supp. 2024) with Ohio Rev.
Code Ann. § 2152.12 (LexisNexis 2007) (mandatory bind­
over dependent upon juvenile’s age and severity of offense)
and Mich. Comp. Laws Ann. § 764.1f (West Cum. Supp.
2025) (same). There is no prescribed formula in Nebraska
that requires juveniles of a specific age, who commit certain
crimes, to be transferred to adult court, nor do the statutes
 - 808 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

create any presumption that a juvenile cannot be timely reha-
bilitated. See State v. Leroux, 26 Neb. App. 76, 913 N.W.2d
903 (2018) (acknowledging § 43-276 does not prevent trans-
fer of homicide charges to juvenile court). Rather, Nebraska
requires a judicial determination through a hearing in which
the juvenile is entitled to representation. The court must per-
form a balancing test in which public protection and societal
security are weighed against the practical and nonproblemati-
cal rehabilitation of the juvenile. To allow the State to forgo
any proof of this latter factor alleviates the burden imposed
upon it by statute.
In Jeremiah T., supra, 319 Neb. at 151, 21 N.W.3d. at 327,
the Nebraska Supreme Court emphasized the “highly deferen-
tial standard of review” required under an abuse of discretion
standard to determine the district court did not err in weigh-
ing the factors of § 43-276. Here, however, my concern is
not how the factors were weighed, but, rather, the absence of
evidence of the factors against which public protection can
be weighed. See In re Interest of William E., 29 Neb. App.
44, 950 N.W.2d 392 (2020) (reversing transfer from juvenile
court to county court in part due to absence of evidence of
amenability or that juvenile could not be rehabilitated in
remaining 15 months of juvenile court jurisdiction). When a
district court’s decision is supported by appropriate evidence,
it cannot be said the court abused its discretion in its transfer
decision. See Jeremiah T., supra. Conversely, an abuse of
discretion exists when appropriate evidence to support the
decision is not adduced. Based on the absence of evidence to
support a finding that Aaden cannot be timely rehabilitated
through the juvenile system, the juvenile court could not con-
duct the required balancing test. Therefore, I would find that
the juvenile court abused its discretion in granting the State’s
motion to transfer.
As we determined in In re Interest of William E., supra, 29
Neb. App. at 55, 950 N.W.2d at 400:
 - 809 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

[T]here was insufficient evidence for the juvenile court to
properly weigh [the juvenile’s] practical and nonproblem-
atical rehabilitation under the juvenile court’s jurisdiction
against those factors favoring transfer to adult court in
the interest of public safety and protection. Absent such
evidence and consideration, we must conclude the juve-
nile court abused its discretion in granting the transfer of
the case to county court.
Accordingly, I would reverse the juvenile court’s order and
remand the cause for further proceedings in the juvenile court.